IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOCAL 541, TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO and TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, | § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:14-cv-3639-L |
| JAMES FUDGE, EARL SMITH, RICK CAMPBELL, NATE PIKE, MARCO AMAYA, KEN YORK, and MARK STEPHENS, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants James Fudge, Earl Smith, Rick Campbell, Nate Pike, Marco Amaya, Ken York, and Mark Stephens filed a Motion to Dismiss Plaintiffs' Original Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Dkt. No. 11, which United State District Judge Sam A. Lindsay referred to the undersigned United States magistrate judge for recommendation, *see* Dkt. No. 16. Plaintiffs Local 541, Transport Workers Union of America, AFL-CIO ("Local 541") and the Transport Workers Union of America, AFL-CIO ("TWU") filed a response, *see* Dkt. No. 14, and Defendants filed a reply, *see* Dkt. No. 15.

The undersigned issues the following findings of fact, conclusions of law, and recommendation that Defendants' Motion to Dismiss Plaintiffs' Original Complaint

[Dkt. No. 11] should be granted for the reasons explained below.

## Background

Plaintiff TWU is a national labor union representing airline and other workers. Plaintiff Local 541 is TWU's local branch that represents American Airlines and American Eagle employees operating out of Dallas/Fort Worth International Airport, including American Airlines flight simulator technicians and engineers. Defendant James Fudge was the President of Local 541 and, along with Defendants Earl Smith, Rick Campbell, Nate Pike, Marco Amaya, Ken York, and Mark Stephens, was a member of the Local 541's Executive Board (the "Local Executive Board").

According to Plaintiffs' Original Complaint [Dkt. No. 2], the Local Executive Board approved providing $500 to each simulator engineer and pilot instructor within Local 541. Plaintiffs allege that the minutes from the board meeting state that the $500 payments were to purchase computers to enhance communications with Local 541 members at American Airlines related to seniority integration in the American Airlines-US Airways merger. According to Plaintiffs, pursuant to the Board's action, Local 541 provided cashier's checks in the amount of $500 to each simulator engineer and pilot instructor employed by American Airlines within Local 541, and the Local Executive Board members also received checks. Plaintiffs allege that the checks were provided without issuing vouchers and that, to receive a check, a member signed the check stub and wrote an email address next to or below the signature. According to Plaintiffs, the member was not required to verify that he or she used the check to purchase a computer, and the Local Executive Board placed no restrictions on how a

member spent the check. Plaintiffs contend that the total expenditure cost Local 541 more than $127,000, which reduced the balance in the Local's treasury by over 40 percent in a single month, and that the Local Executive Board did not report the expenditure to the national union. According to Plaintiffs, at the time of the expenditure, Local 541 needed to prepare for merger negotiations and to confront an ongoing raid by the National Association of Airline Professionals ("NAAP"), which was seeking to replace TWU as the bargaining representative for the American Airlines simulator engineers and pilot instructors.

Plaintiffs further allege that, about this same time, Local 541 provided money to the law firm of Seham, Seham, Meltz and Peterson, LLP for performing work for Local 541 at the Local Executive Board's request. According to Plaintiffs, the Seham firm represents the Aircraft Mechanics Fraternal Association ("AMFA"), a union that has sought and is currently seeking to displace TWU as the bargaining representative for American Airlines mechanics. Plaintiffs contend that Local 541 initially paid the Seham firm a $10,000 retainer and that the Local Executive Board later approved payment of – and the Seeham firm was paid – $20,000 for drug and alcohol abuse work plus payments of $7,490 and $20,000 for work related to seniority integration issues arising from the merger. Plaintiffs allege that Local 541 paid the Seham firm without issuing vouchers and that the Local Executive Board did not inform TWU about the payments to the Seham firm.

According to Plaintiffs, the TWU International Administrative Committee subsequently placed Local 541 under trusteeship protection on an emergency basis and

appointed Gary Shults as Administrator for Local 541. Plaintiffs allege that, at Administrator Shults's request, the Seham firm returned $10,999.71, which purportedly represented the unused portion of the amounts that Local 541 provided. Plaintiffs allege that the TWU International Executive Council voted to continue the trusteeship and found that payments of the $500 cashiers checks to members and payments to the Seham firm violated multiple sections of the TWU Constitution.

According to Plaintiffs, after the trusteeship was confirmed, the Local Executive Board members resigned their positions in Local 541. Plaintiffs contend that Defendant Fudge resigned as Local 541 President after NAAP filed petitions with the National Mediation Board to represent the dispatchers, simulator engineers, and pilot instructors at American Airlines and that Fudge is now NAAP's President. Plaintiffs allege that Defendants coordinated with the leadership of Local 542, TWU's local union that represents dispatchers employed by American Airlines and other airlines and that, like Local 541, Local 542 provided $500 to its members, provided money to the Seham firm, and allegedly failed to fight the NAAP raid.

Plaintiffs have sued Defendants for breach of fiduciary duties under Section 501(a) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), and assert that, because "no member of Local 541 is a plaintiff in this action, there is no need to satisfy the prerequisites for filing suit under Section 501(b)." Dkt. No. 2 at 9. Plaintiffs have also sued for breach of fiduciary duties under Texas common law. *See id.* at 10.

Plaintiffs allege that, by virtue of their positions, Defendants owed fiduciary

-4-

duties to both Local 541 and TWU. According to Plaintiffs, the TWU Constitution requires that a local not be wasteful in the expenditure or control of its assets, that a local not gratuitously divide its assets among its members but instead use its funds for the local's legitimate purposes, and that payments not be made without vouchers. Plaintiffs contend that the TWU Constitution also bars improper payments and the creation of a local fund distinct from regular local treasury funds.

Plaintiffs allege that there was no basis for concluding that Local 541 was unable to communicate appropriately with members or that the purchase of computers would markedly enhance communications and that Plaintiffs have found no evidence that any of the Local 541 members used the $500 cashier's checks to purchase computers. Plaintiffs also contend that, through its payments to the Seham firm, the Local Executive Board set up a local fund distinct from the regular treasury funds. According to Plaintiffs, Defendants breached their fiduciary duties by voting in favor of the expenditures to Local 541's members and the Seham firm, failing to report those expenditures to TWU, and attempting to deplete Local 541's treasury so that it would be unable to effectively oppose the NAAP raid.

Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) asserting that this Court lacks subject matter jurisdiction over Plaintiffs' claims and that Plaintiffs' Original Complaint fails to state a claim on which relief can be granted. Defendants contend that labor unions do not have standing to sue under Section 501, that Plaintiffs were required and failed to comply with Section 501(b)'s conditions precedent before filing suit, that Defendants did not owe a duty of loyalty to Plaintiffs,

and that Plaintiffs' claims are preempted because the National Mediation Board has exclusive jurisdiction.

The undersigned now concludes that the motion to dismiss should be granted for the reasons explained below.

### Legal Standards

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

The Court must dismiss a complaint for lack of subject matter jurisdiction "'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based solely on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644

F.2d 521, 523 (5th Cir. 1981); *accord Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523. On a factual attack, however, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523.

Ultimately, the Court will grant a Rule 12(b)(1) motion to dismiss "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n*, 143 F.3d at 1010; *see also Hinds v. Roper*, No. 3-07-CV-0035-B, 2007 WL 3132277, at *2 (N.D. Tex. Oct. 25, 2007).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495

-8-

F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.* In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

### Plaintiffs Have an Implied Cause of Action Under 29 U.S.C. § 501(a)

Section 501(a) of the LMRDA imposes fiduciary duties on the representatives

of labor organizations. *See* 29 U.S.C. § 501(a). Specifically, the Act provides that "[t]he officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group" and requires that they hold and manage the union's money and property for the sole benefit of the organization, refrain from self-dealing, and remain loyal to the organization. *See id.*

Section 501(b) creates a federal cause of action for individual union members to sue "and recover damages ... for the benefit of the labor organization" when a union officer allegedly breaches his fiduciary duties "and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the organization." *Id.* § 501(b). The United States Supreme Court has noted that this language "certainly contemplates that a union may bring suit against its officers in some forum, but it does not expressly provide an independent basis for federal jurisdiction." *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 374 n.16 (1990).

A split of authority exists as to whether Section 501 creates an implied cause of action for unions, *see id.* (acknowledging division but declining to resolve the issue), and the Fifth Circuit has not addressed the issue. Two of the three circuit courts that have addressed it and a judge in the United States District Court for the Southern District of Texas have found that unions have an implied cause of action to allege a violation of Section 501(a). *See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v.*

*Ward*, 563 F.3d 276, 279 (7th Cir. 2009) (union has a cause of action); *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Statham*, 97 F.3d 1416, 1421 (11th Cir. 1996) (same); *Bldg. Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500, 506-07 (9th Cir. 1989) (no cause of action); *Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 16 F. Supp. 3d 783, 792-93 (S.D. Tex. 2014) (union has a cause of action).

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). "'In determining whether a cause of action is implied, '[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.'" *Banks. v. Dallas Hous. Auth.*, 271 F.3d 605, 611 (5th Cir. 2001) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). "Statutory intent on this latter point is determinative." *Alexander*, 532 U.S. at 286. "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. Legislative intent "may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *TAMA*, 444 U.S. at 18. But, in any event, any "private rights of action to enforce federal law must be created by Congress." *Alexander*, 532 U.S. at 286.

In *Traweek*, the United States Court of Appeals for the Ninth Circuit pointed to the express language in Section 501(b) that provides union members with a right of

action as evidence that Congress did not also intend a right of action for unions under Section 501(b), holding that "[t]he clear language of the statute does not contemplate a suit brought by a union, but only addresses the availability of a suit when the union refuses to sue." *Traweek*, 867 F.2d at 506-07. The Ninth Circuit emphasized the "federal policy of noninterference in the internal affairs of unions and labor matters" and the "general principle ... that the scope of federal jurisdictional statutes should be construed narrowly" to reach its conclusion that only a union member has standing to sue under Section 501. *See id.*; *see also Stewart*, 16 F. Supp. 3d at 792 (discussing *Traweek*). *But see Serv. Employees Int'l Union v. Roselli*, No. C 09-00404 WHA, 2009 WL 1382259 (N.D. Cal. May 14, 2009) (concluding that an implied cause of action by a union exists under Section 501(a) and explaining that, "[i]n holding that Section 501(b) is limited to suits by union members and that unions themselves cannot sue under Section 501(b), *Building Materials & Dump Truck Drivers Local 420 v. Traweek*, 867 F.2d 500, 506-07 (9th Cir. 1989), did not consider whether Section 501(a) implies a right of action by unions"; that "[t]he actual holding of *Traweek* expressly pertained only to Section 501(b) and not to Section 501(a)"; that "[i]t is true that Section 501(b) does not also say that labor unions themselves can sue for their own account – but that is already manifestly implied in Section 501(a)"; that "[i]t would be topsy-turvy to create a federal fiduciary duty in favor of unions yet *not* create a federal right of action by unions to vindicate it"; and that "[i]t would be even more topsy-turvy to allow derivative actions on behalf of unions but not to allow direct actions by unions themselves").

-12-

The United States Court of Appeals for the Eleventh Circuit interpreted the statute differently in *Statham*. The Eleventh Circuit focused on Section 501(b)'s language that permitted a union member to sue only after the union refuses or fails to take action. The Eleventh Circuit reasoned that, "[b]y giving the union the right of first refusal to the cause of action, section 501(b) shows Congress preferred that the union, rather than individual members, sue on its behalf." *Statham*, 97 F.3d at 1419. "The [*Statham*] court noted that '[o]ne of the early cases on this issue reasoned that if Congress assumed unions could sue, and even preferred direct action by the union to a derivative-type suit by individuals, Congress must have intended that the unions have access to federal courts.'" *Stewart*, 16 F. Supp. 3d at 792 (quoting *Statham*, 97 F.3d at 1419 (citing *BRAC v. Orr*, 95 L.R.R.M. 2701, 2702 (E.D. Tenn. 1977))). The *Statham* court also "addressed the argument that 'Congress could conceivably have intended to relegate the unions to state law remedies,' deciding that it is 'far more in keeping with the statute as a whole to conclude that, having given the unions certain rights, Congress thought it implicit that the unions could enforce those rights in court. Allowing the individuals to assert the unions' claims was more extraordinary and therefore had to be spelled out.'" *Stewart*, 16 F. Supp. 3d at 792 (quoting *Statham*, 97 F.3d at 1420-21). The Court of Appeals in *Statham* concluded "that section 501(a) was intended to create a federal cause of action that can be asserted by the union on its own behalf." *Statham*, 97 F.3d at 1421.

In *Ward*, 563 F.3d at 286-88, the United States Court of Appeals for the Seventh Circuit "adopted this reasoning and expanded on how the derivative-type action

-13-

created in subsection (b) reinforces the implication that subsection (a) contains an implied right of action for unions themselves." *Stewart*, 16 F. Supp. 3d at 792. As the *Stewart* court observed, the Fifth Circuit, in a case construing Section 501(b)'s "good cause" requirement, also found the shareholder derivative analogy to be instructive "[b]ecause the suit by a union member is 'for the benefit of the labor organization.'" *Id.* (quoting *Hoffman v. Kramer,* 362 F.2d 308, 17 n.4 (5th Cir. 2004) (quoting 29 U.S.C. § 501(b))). The Seventh Circuit in *Ward* examined the statute's text, including each of the fiduciary duties that Section 501(a) imposes, and noted that those duties were between union officers and the union. "The statutory rights conferred by subsection (a) belong to the union; individual union members are derivative beneficiaries, and under subsection (b) they may sue in federal court on the union's behalf to vindicate those rights, but only if the union itself first fails or refuses to do so." *Ward*, 563 F.3d at 288. The Seventh Circuit then observed that "[i]t would be anomalous indeed to read this statutory scheme as remitting the union's own suit – which is primary under the statutory hierarchy – to state court." *Id.* The Court of Appeals concluded that "[t]he text and structure of the statute as a whole demonstrate Congress's intent to confer upon unions federal rights and a federal remedy." *Id.* at 289.

Like the district court in *Stewart*, the undersigned "finds the reasoning of the Seventh and Eleventh Circuits to be persuasive" and consistent with the Supreme Court's guidance on implied causes of action in *Alexander v. Sandoval*, 532 U.S. 275 (2001), "and concludes that unions have an implied federal cause of action under Section 501(a) to sue for violations of the fiduciary duties imposed by the statute."

-14-

*Stewart*, 16 F. Supp. 3d at 793.

The undersigned concludes that Plaintiffs have standing to sue under Section 501(a) of the LMRDA, 29 U.S.C. § 501(a), and recommends that the Court deny Defendants' motion to dismiss on this ground.

<u>Plaintiffs' Section 501(a) Action is Not Subject to 29 U.S.C. § 501(b)'s Requirements</u>

Defendants argue that, even if Plaintiffs are proper plaintiffs under the statute, their claims must be dismissed because they failed to comply with Section 501(b)'s prerequisites to suit. Section 501(b) provides that a union member must obtain leave of court on a verified application and for good cause shown before he or she can bring suit. Defendants contend that Plaintiffs lack standing because they failed to obtain leave of court or to show good cause before filing suit.

But Plaintiffs' claims arise under subsection 501(a); the requirements of subsection 501(b) apply only to actions brought by union members. As the *Stewart* court observed, "'it would be absurd ... to require the union to make a demand upon itself to sue, and to refuse that demand, before properly invoking the court's jurisdiction.'" *Stewart*, 16 F. Supp. 3d at 793 (quoting *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Va. Int'l Terminals Inc.*, 914 F. Supp. 1335, 1340 (E.D. Va. 1996)).

The undersigned concludes that a plaintiff union need not make an application showing good cause and obtain leave of court before filing a lawsuit under Section 501(a) and that, notwithstanding Defendants' argument to the contrary, the Fifth Circuit's *Hoffman* decision does not hold or dictate to the contrary. *See, e.g., Hoffman,*

362 F.2d at 313, 318-19 ("Before union members may sue officers of their union for breach of their fiduciary duties under Title V of the Labor Management Reporting and Disclosure Act ('LMRDA'), 29 U.S.C. § 501(a), they must convince the trial court that there is 'good cause' for the suit. 29 U.S.C. § 501(b). .... [O]nly upon a sufficient showing that the union's refusal to act on the members' complaint was unreasonable in the light of the purposes of § 501 should leave to sue be granted.").

Accordingly, the undersigned recommends that the Court deny Defendants' motion to dismiss on this ground.

Defendants Owe a Duty of Loyalty to Plaintiffs

Defendants also argue that they did not owe a duty of loyalty to Plaintiffs but, rather, only owe a duty of loyalty to Local 541's members. *See Operative Plasters & Cement Masons Intern. Ass'n of U.S. and Canada, AFL-CIO v. Benjamin*, 843 F. Supp. 1267, 1274 (N.D. Ind. 1993). But the *Benjamin* case quoted by Defendants did not say that a local union officer owes no fiduciary duty to either the local or the international, and such a ruling would be contrary to Section 501(a)'s plain language regarding the scope of union officers' duties and to whom they are owed. *See* 29 U.S.C. § 501(a). The undersigned therefore recommends that the Court deny Defendants' motion to dismiss on this ground.

Plaintiffs' Claims Fall within the National Mediation Board's Exclusive Jurisdiction

Finally, Defendants argue that Plaintiffs' claims, which Defendants characterize as raising an issue of rebating dues for the alleged purpose of supporting a rival union, fall under the exclusive jurisdiction of the National Mediation Board ("NMB").

-16-

The Railway Labor Act ("RLA") commits disputes involving a determination of who is to represent airline employees in collective bargaining to the exclusive jurisdiction of the NMB. *See* 45 U.S.C. § 152, Ninth; *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (Airline Division) v. Tex. Int'l Airlines, Inc.*, 717 F.2d 157, 158 (5th Cir. 1983) ("*IBT*"). "A court may not entertain an action involving such a dispute even if it arises in the context of otherwise justiciable claims." *IBT*, 717 F.2d at 161 (citing *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297 (1943); *Bhd. of Locomotive Firemen v. Seaboard Coast Line R. Co.*, 413 F.2d 19 (5th Cir. 1969)); *see also Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 414 (5th Cir. 1990). "[T]he scope of the NMB's power under §152, *Ninth*, is narrowly limited to determining the representative and issuing its certificate," *Ass'n of Flight Attendants, AFL-CIO v. Delta Air Lines, Inc.*, 879 F.2d 906, 912 (D.D.C. 1989), however, and there is no preemption when the conduct complained of is only of peripheral concern to the RLA, *see Indep. Fed. of Flight Attendants v. Cooper*, 141 F.3d 900, 903 (8th Cir. 1992). "The test for RLA preemption is whether an award of damages would be the functional equivalent of resolving the representation dispute." *See id.* (citing *Delta*, 879 F.2d at 915-17); *see also IBT*, 717 F.2d at 164 ("Given the Mediation Board's undeniable sole jurisdiction over representation matters, we infer from the practical problems of divided jurisdiction a congressional intention to allow that agency alone to consider the post-merger problems that arise from existing collective bargaining agreements.").

In their motion to dismiss, Defendants report that the NMB is investigating

-17-

TWU's submission seeking to dismiss the election application of NAAP on grounds that the payment of the $500 cashier's checks to Local 541 members improperly influenced the affected employees' decision to execute authorization cards in favor of the NAAP. *See* Dkt. No. 11 at 9. Plaintiffs respond that the issue before the NMB and those raised in this lawsuit are different:

> Consistent with this narrow scope, the issue now before the NMB is whether the NAAP has submitted a sufficient number of authorization cards from among simulator engineers and pilot instructors at American Airlines to warrant the NMB conducting an election to determine whether a majority of simulator engineers and pilot instructors at American Airlines who cast ballots votes for the NAAP to serve as their collective bargaining representative. In resolving that limited issue, the NMB must consider whether there were improprieties in the solicitation of any of those authorization cards. As a matter of law under the RLA, and from the NMB's perspective, it does not matter whether the cards were improperly solicited using money from the Local 541 treasury, from the former officers' personal bank accounts, or from any other source.
>
> The issue before this court, in contrast, does not concern who shall serve as the collective bargaining representative of simulator engineers and pilot instructors at American Airlines. Nor does it concern whether NAAP authorization cards were improperly solicited.

Dkt. No. 14 at 20. (The complaint filed with the NMB is not before the Court, but, even if it were, the Court could not consider it for purposes of the motion to dismiss.) Defendants reply that, "[i]n the present case, TWU has already filed a submission with the NMB seeking to investigate a rival union's election on grounds that Defendants' expenditures improperly influenced the defection of union members from TWU"; that "the NMB must be able to consider the legality of Defendants' allocation of union funds as part of its larger determination of the allocation's effect on the rival union election"; and that "[a]ny rulings by this Court relating to Defendants' allocation of union

resources run the risk of conflicting with the NMB's jurisdiction over the case and undermining its efforts to thoroughly and fairly investigate Plaintiffs' case." Dkt. No. 15 at 8-9.

The issue in this lawsuit is whether Defendants breached their fiduciary duties to the union. Plaintiffs allege that "[t]he Local Executive Board failed to commit itself to TWU and against the NAAP raid" and that, "by providing funds to Local members at American Airlines, ... the Local Executive Board members sought to build political support for themselves by using Local money." Dkt. No. 2 at 8. According to Plaintiffs, Local 541 was placed into trusteeship based on the Local Executive Board's approval of the expenditure and issuance of checks to the membership and allegedly improper payments to the Seham firm. *See id.* at 2-3. Plaintiffs contend that, since the trusteeship, all Defendants resigned from their positions on Local 541's Executive Board and that Defendant Fudge resigned his post as Local 541 President after NAAP filed petitions with the NMB to represent the dispatchers, simulator engineers, and pilot instructors at American Airlines and is now NAAP's President. *See id.* at 8-9. Plaintiffs also allege that "the Local Executive Board attempted to deplete the Local's treasury so that [Local 541] would be unable to effectively oppose the NAAP raid" and that it coordinated with Local 542 to provide $500 payments to its members, retain and provide large amounts of the local's funds to the Seham firm, and fail to fight NAAP. Dkt. No. 2 at 8-9.

The undersigned disagrees with Plaintiffs' argument that "nowhere in the original complaint do Plaintiffs allege that Defendants breached Section 501(a) by

-19-

'rebating [] dues for the alleged purpose of supporting a rival union.'" Dkt. No. 14 at 21 (footnote omitted; quoting Dkt. No. 11 at 9). As explained immediately above, without using those exact words, Plaintiffs' Original Complaint does make such an allegation. *See, e.g.*, Dkt. No. 2 at 8-9.

And, under the allegations advanced in Plaintiffs' Original Complaint [Dkt. No. 2], the issues of whether Defendants breached their fiduciary duties and are subject to monetary damages "are inextricably intertwined with [the] representation dispute," *Cooper*, 141 F.3d at 903 – which Plaintiffs themselves describe as "consider[ing] whether there were improprieties in the solicitation of any of those authorization cards" cast from among simulator engineers and pilot instructors at American Airlines that resulted in a vote for the NAAP to serve as their collective bargaining representative, Dkt. No. 14 at 15 – which is within the NMB's exclusive jurisdiction. *Cf. Minjares v. Indep. Ass'n of Continental Pilots*, 293 F.3d 895, 897-99 (5th Cir. 2002). The undersigned agrees with Defendants' position that "the NMB must be able to consider the legality of Defendants' allocation of union funds as part of its larger determination of the allocation's effect on the rival union election" and that "[a]ny rulings by this Court relating to Defendants' allocation of union resources run the risk of conflicting with the NMB's jurisdiction." Dkt. No. 15 at 8-9. That, as Plaintiffs assert, "from the NMB's perspective, it does not matter whether the cards were improperly solicited using money from the Local 541 treasury, from the former officers' personal bank accounts, or from any other source" does not change that. Dkt. No. 14 at 15. Accordingly, the undersigned concludes that the claims raised in this lawsuit are

within the exclusive jurisdiction of the NMB and recommends that the Court grant Defendants' motion to dismiss on this ground.

## Recommendation

Defendants' Motion to Dismiss Plaintiffs' Original Complaint [Dkt. No. 11] should be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 24, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-21-